IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

MARIA ELENA GALVEZ,                 §
                                    §
                    Plaintiff,      §
                                    §  Civil Action No. 3:20-CV-0238-D
VS.                                 §
                                    §
KLLM TRANSPORT SERVICES, LLC,       §
et al.,                             §
                                    §
                    Defendants.     §

MEMORANDUM OPINION
AND ORDER

In this removed action, defendants KLLM Transport Services, LLC ("KLLM") and

Charles Lynn Waldo ("Waldo") move to strike plaintiff Maria Elena Galvez's ("Galvez's")

expert designation of Andrew Indresano, M.D. ("Dr. Indresano") and to exclude expert

testimony by Dr. Indresano.  For the reasons that follow, the court denies the motions, but

it denies defendants' motion to strike Galvez's expert designation of Dr. Indresano without

prejudice to their moving for appropriate relief within 21 days of the date this memorandum

opinion and order is filed.

I

The court assumes the parties' familiarity with its prior memorandum opinions and

orders in this case,[1] and limits its discussion of the background facts and procedural history

_____

[1]*Galvez v. KLLM Transp. Servs. LLC*, 2021 WL 101514, at *1 (N.D. Tex. Jan. 12, 2021) (Fitzwater, J.); *Galvez v. KLLM Transp. Servs. LLC*, 2021 WL 1966814, at *1 (N.D. Tex. May 17, 2021) (Fitzwater, J.).

to what is necessary to understand this decision.

Galvez brought this action in state court to recover damages caused by a collision between a vehicle that Galvez was driving and a vehicle (owned by KLLM) that Waldo was driving.  Defendants removed the case to this court.

After the collision, Galvez saw Dr. Indresano, an orthopedic surgeon, who treated her for injuries to her cervical spine, including performing spinal surgery.  Galvez designated Dr. Indresano as a "non-retained" expert in her December 29, 2020 designation of expert witnesses.  Consequently, she did not produce the more comprehensive written report that would be required under Fed. R. Civ. P. 26(a)(2)(B) of a witness who is retained or is specially employed to provide expert testimony in the case.  Instead, Galvez attached to her designation a letter from Dr. Indresano that addressed causation, which Dr. Indresano stated he prepared for a $250 fee.

After Dr. Indresano testified by deposition on September 15, 2021, defendants filed the instant motions to strike Galvez's designation of Dr. Indresano and to exclude his testimony.  The motion to exclude relates to three topics: (1) the reasonableness of the costs of any services Dr. Indresano provided; (2) the reasonableness of the costs and necessity of any services of providers other than Dr. Indresano; and (3) whether Galvez's injuries were caused by the collision between Galvez and Waldo.  Defendants also maintain that Dr. Indresano's opinions on causation and the reasonableness of medical expenses should be excluded under Fed. R. Evid. 702.  Galvez opposes defendants' motions, which the court now decides on the briefs.

II

The court first considers defendants' motion to strike Galvez's expert[2] designation of

Dr. Indresano.

A

Defendants maintain, *inter alia*, that Dr. Indresano qualifies as a retained expert under

Rule 26(a)(2)(B), and that Galvez's disclosures do not satisfy the requirement that she

produce an expert report of Dr. Indresano, as Rule 26(a)(2)(B) requires.  Defendants also

posit that, even if the court concludes instead that Dr. Indresano is an expert within the scope

of Rule 26(a)(2)(C)—meaning that no such written report is required—the court should strike

Dr. Indresano's opinions related to the reasonableness of the costs of treatment because

Galvez's disclosures do not provide a summary of the facts on which his opinions are based.

Galvez responds that, because Dr. Indresano is a treating physician, she is not required

to provide a written report under Rule 26(a)(2)(B).  And she contends that all of Dr.

Indresano's opinions related to causation and the reasonableness of the costs of services that

he and others provided are based on his observations during his treatment of Galvez and

therefore do not require a retained-expert report.

Defendants reply that, to the extent that Dr. Indresano's opinions relate to causation

and the reasonableness of medical costs, he is a retained expert because his opinions were

---

[2]For purposes of this memorandum opinion and order, the court will use the shorthand term "expert."  Rule 26(a)(2)(A) actually refers to "any witness [a party] may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705."

formed outside the ordinary course of his treatment of Galvez.

B

The 2010 amendments to Rule 26(a)(2) recognize two categories of expert witnesses: those as to whom a party is required to provide a written report, and those as to whom no such report is required. "[I]f the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony," the disclosing party must provide a written report that contains six categories of information. *See* Rule 26(a)(2)(B).[3] Otherwise, the disclosing party is not required to produce a written report but is obligated to disclose "the subject matter on which the witness is expected to present evidence" and "a summary of the facts and opinions to which the witness is expected to testify." Rule 26(a)(2)(C).

The Advisory Committee Notes to the 2010 amendments to Rule 26(a)(2) explain that Rule 26(a)(2)(C) was "added to mandate summary disclosures of the opinions to be offered by expert witnesses who are not required to provide reports under Rule 26(a)(2)(B) and of

---

[3]Rule 26(a)(2)(B) provides that the report must contain:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
> (ii) the facts or data considered by the witness in forming them;
> (iii) any exhibits that will be used to summarize or support them;
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
> (vi) a statement of the compensation to be paid for the study and testimony in the case.

- 4 -

the facts supporting those opinions." The proviso was meant to "resolve[] a tension that has sometimes prompted courts to require reports under Rule 26(a)(2)(B) even from witnesses exempted from the report requirement. An (a)(2)(B) report is required only from an expert described in (a)(2)(B)." Rule 26(a)(2)(C) advisory committee's note (2010 amendment). According to the Advisory Committee:

> [a] witness who is not required to provide a report under Rule 26(a)(2)(B) may both testify as a fact witness and also provide expert testimony under Evidence Rule 702, 703, or 705. Frequent examples include physicians or other health care professionals and employees of a party who do not regularly provide expert testimony. Parties must identify such witnesses under Rule 26(a)(2)(A) and provide the disclosure required under Rule 26(a)(2)(C).

*Id.*

## C

The court first decides whether Galvez was required under Rule 26(a)(2)(B) to produce a written report from Dr. Indresano.

The Fifth Circuit has not directly addressed how a court should determine whether an expert is "retained or specially employed" under Rule 26(a)(2)(B). Other courts, however, have examined this issue. The First Circuit, for example, has explained that, "[i]n order to give the phrase 'retained or specially employed' any real meaning, a court must acknowledge the difference between a percipient witness who happens to be an expert and an expert who without prior knowledge of the facts giving rise to litigation is recruited to provide expert opinion testimony." *Downey v. Bob's Discount Furniture Holdings, Inc.*, 633 F.3d 1, 6 (1st

- 5 -

Cir. 2011).

Consistent with the First Circuit's reasoning, district courts in this circuit have "distinguish[ed] between opinions that the treating physician arrives at in the course of treatment, and opinions that the treating physician arrives at after treatment, for the purposes of litigation." *United States v. Williams*, 2020 WL 10320725, at *3 (N.D. Tex. Mar. 23, 2020) (Cummings, J.) (quoting *Madrid v. Wells Fargo Bank, N.A.*, 2016 WL 9455141, at *5 (W.D. Tex. June 16, 2016)) (collecting cases); *see also Lee v. Valdez*, 2008 WL 4287730, at *3 (N.D. Tex. Sept. 18, 2008) (Fitzwater, C.J.) (explaining that, prior to the 2010 amendment to Rule 26, "the treating-physician exception applie[d] only to opinion testimony based on the physician's personal knowledge of the examination and treatment of the party"). And if a disclosing party does not provide a written report from a treating physician, district courts in this circuit have held that the treating physician's "testimony must remain confined to facts disclosed during care and treatment of the patient, including his diagnosis, the causation of a plaintiff's injuries, and the patient's prognosis, as long as the doctor formed those opinions based on his personal knowledge and observations obtained during the course of care and treatment." *McElveen v. Wal-Mart Stores, Inc.*, 2019 WL 638371, at *2 (S.D. Miss. Feb. 14, 2019) (quoting *Barnett v. Deere*, 2016 WL 4735312, at *1 (S.D. Miss. Sept. 11, 2016)).[4]

_____

[4]Other courts have advocated for a more plain text interpretation of the terms "retained" or "specifically employed." *See Torres v. Wal-Mart Stores E., L.P.*, 2021 WL 3634632, at *10-16 (S.D. Fla. Aug. 17, 2021) (advocating for plain text reading of Rule 26(a)(2)(B), in part because the addition of Rule 26(a)(2)(C) alleviates concerns that a party

Based on the court's review of the record, it concludes that Dr. Indresano formed his causation opinion during his treatment of Galvez. As Dr. Indresano explains in his causation letter, his opinion that the accident most likely caused Galvez's symptoms is based on her medical history, a physical exam, and imaging of her spine. P. Designation of Exp. Witnesses 8-9. And there is no indication in the record that Dr. Indresano relied on outside resources that were provided in anticipation of litigation, which could indicate that Galvez was required to produce a written report under Rule 26(a)(2)(B). *See Perez v. Boecken*, 2020 WL 3074420, at *5 (W.D. Tex. June 10, 2020) (holding that a Rule 26(a)(2)(B) report was required to the extent that the treating physician based his causation opinion on his review of the accident report, which was not a normal part of his course of treatment).

With respect to Dr. Indresano's opinions related to the reasonableness of medical costs, Galvez maintains that Dr. Indresano testified only about the reasonableness of charges for his own medical services and for those directly related to the surgery he performed, such as the charges for anesthesia and for a surgical assistant. Galvez contends that these are "charges [Dr. Indresano] would naturally have reviewed and seen for any patient on whom he performed surgery." P. Resp. 13.

---

will be surprised by a treating physician's testimony). But still others have concluded that whether "a witness falls within [Rule 26(a)(2)(B)'s] requirement is determined primarily by the scope, substance, and source of the intended testimony—not on whether the witness is being compensated." *Ulbrick v. UPR Prod., Inc.*, 2011 WL 500034, at *4 (E.D. Mich. Feb. 8, 2011); *see Call v. City of Riverside*, 2014 WL 2048194, at *9 (S.D. Ohio May 19, 2014) (collecting cases and holding that "whether the expert witness receives compensation is irrelevant to the issue of whether he or she is 'retained or specially employed to provide expert testimony in the case'").

Although the precedent on this issue is limited and somewhat contradictory, at least one district court in this circuit has held that a disclosing party is not required to produce a written report from a treating physician under Rule 26(a)(2)(B) if the physician's opinions on the reasonableness of medical expenses are based on "his personal experiences in many years of doing spinal surgeries and treating patients himself." *Cantu v. Wayne Wilkens Trucking, LLC*, 487 F.Supp.3d 578, 583 (W.D. Tex. 2020); *Perez*, 2020 WL 3074420, at *5 & n.4 (concluding that treating physician's opinions as to the reasonableness and necessity of plaintiff's medical expenses did not require a Rule 26(a)(2)(B) report); *see also Salas v. Transwood Logistics, Inc.*, 2021 WL 4483511, at *5 (S.D. Tex. July 7, 2021) (explaining that although treating physician could not testify based on "information, such as medical records from other physicians or medical expense data, acquired outside the course of Plaintiff's treatment," the physician's opinions formed during the course of treatment "could arguably include testimony on causation and damages"), *report and rec. adopted*, 2021 WL 4480746 (S.D. Tex. Sept. 30, 2021); *but see George v. Metro. Prop. & Cas. Ins. Co.*, 2020 WL 70424, at *7 (D. Colo. Jan. 2, 2020) (excluding treating physician's opinions on the reasonableness of medical bills because the opinions were not formed during treatment of the patient).

Based on the precedents that the court finds persuasive, it concludes that Galvez is not required to produce a written report from Dr. Indresano under Rule 26(a)(2)(B), provided that Dr. Indresano's testimony is limited to the opinions he formed while treating Galvez and to information he would normally have reviewed as a part of that treatment. But Dr. Indresano cannot, for example, testify about the reasonableness of medical bills that are unrelated to his

treatment and that he only obtained in preparation for litigation, unless Galvez discloses a proper Rule 26(a)(2)(B) written report from Dr. Indresano.

D

Having addressed the extent to which the written report requirement of Rule 26(a)(2)(B) applies to the pertinent opinions of Dr. Indresano, the court now considers whether Galvez's disclosure of Dr. Indresano's opinions concerning the reasonableness of Galvez's medical costs is sufficient under Rule 26(a)(2)(C).[5]  Galvez does not specifically respond to this argument.

Under Rule 26(a)(2)(C), a disclosing party who is not required to produce a written report from an expert witness must still disclose "(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify."  This Rule is intended to ensure that an opposing party has some notice of what an expert witness who is not retained or specially employed will testify about.  *See* 8A Charles Alan Wright, et al., *Federal Practice and Procedure* § 2031.2, at 92 (3d ed. 2010 & Supp. 2021).  The disclosure must, at the very least, "state opinions, not merely topics of testimony," and "contain . . . a summary of the facts upon which the opinions are based."  *Everett Fin., Inc. v. Primary Residential Mortg., Inc.*, 2017 WL 90366, at *2 (N.D. Tex. Jan. 10, 2017) (Fitzwater, J.)

---

[5]Defendants do not argue that Galvez's disclosure of Dr. Indresano's causation opinion is deficient under Rule 26(a)(2)(C), and the court agrees that the requirements of Rule 26(a)(2)(C) have been satisfied with respect to Dr. Indresano's causation opinion.

(citing *Carr v. Montgomery Cnty., Tex.*, 2015 WL 5838862, at *3 (S.D. Tex. Oct. 7, 2015)).
"[T]he requirement of a 'summary' may be satisfied by an 'abstract, abridgement, or
compendium of the opinion and facts supporting the opinion,'" *id.* (quoting *Anders v.
Hercules Offshore Servs., LLC*, 311 F.R.D. 161, 164 (E.D. La. 2015)), and the court "must
take care against requiring undue detail, keeping in mind that these witnesses have not been
specially retained and may not be as responsive to counsel as those who have." *Id.* (quoting
Rule 26(a)(2)(C) advisory committee's note (2010 amendment)).

 Galvez's disclosure related to the reasonableness of medical bills states that "Dr.
Indresano will testify that the care and treatment Plaintiff received as a result of the collision
was necessary and that the charges were reasonable.  Lastly, Dr. Indresano may also testify
concerning the necessity of other facilities' medical treatment to Plaintiff and the
reasonableness of those charges."  P. Rule 26(a)(2) 3d. Supp. Disclosures 2.  Galvez's
disclosures also include a table listing the "reasonable and necessary medical bills" she seeks
to recover.  *Id.* at 5.

 The court holds that Galvez's disclosures related to Dr. Indresano's testimony about
the reasonableness of the medical charges do not satisfy Rule 26(a)(2)(C).  This is so because
Rule 26(a)(2)(C)(ii) requires, *inter alia*, that the disclosing party state "a summary of the
facts . . . to which the witness is expected to testify," which this court has held means that the
disclosing party must provide a summary of the facts upon which the opinions are based.  *See
Everett Fin., Inc.*, 2017 WL 90366, at *2.  Galvez does not disclose the facts that Dr.
Indresano relied on in forming his opinions about the reasonableness of medical charges.

And although Galvez's disclosure states that Dr. Indresano may also testify regarding the reasonableness of other facilities' charges, it does not state what his opinions are regarding the reasonableness of those charges or the facts on which any such opinions are based.  It is insufficient for Galvez merely to state that Dr. Indresano may have an opinion: she must state a summary of his opinions and of the facts on which he relies to support them.  Because the expert disclosures pertaining to Dr. Indresano fail to state the summary that Rule 26(a)(2)(C) requires, the court concludes that Galvez's expert disclosure is deficient insofar as it relates to the reasonableness of medical charges.[6]

E

Having concluded that Galvez's expert disclosure related to Dr. Indresano's expert testimony about the reasonableness of medical charges fails to comply with Rule 26(a)(2)(C), the court turns to the question of whether this "failure was substantially justified or is harmless."  Rule 37(c)(1).

1

"The district court has broad discretion in deciding whether a Rule 26(a) violation is substantially justified or harmless."  *Everett Fin., Inc.*, 2017 WL 90366, at *4 (quoting *Sea Side Villas II Horizontal Prop. Regime v. Single Source Roofing Corp.*, 64 Fed. Appx. 367, 372 (4th Cir. 2003)).

---

[6]This conclusion does *not* apply to Galvez's disclosure of Dr. Indresano's causation opinion.  As the court states above, *see supra* note 5, the requirements of Rule 26(a)(2)(C) have been satisfied with respect to Dr. Indresano's causation opinion.

> In evaluating whether a violation of Rule 26 is harmless, the court examines four factors: (1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose.

*Hoffman v. L&M Arts*, 2013 WL 81578, at *2 (N.D. Tex. Jan. 8, 2013) (Fitzwater, C.J.) (citing *Librado v. M.S. Carriers, Inc.*, 2004 WL 1490304, at *11 (N.D. Tex. June 30, 2004) (Fitzwater, J.)); *accord, e.g., Viera v. Signature Contracting Servs., LLC*, 2014 WL 2893208, at *1 (N.D. Tex. June 26, 2014) (Horan, J.). "The court considers the four-factor test holistically. It does not mechanically count the number of factors that favor each side." *Hoffman*, 2013 WL 81578, at *3 n.7 (quoting *EEOC v. Serv. Temps, Inc.*, 2009 WL 3294863, at *3 (N.D. Tex. Oct. 13, 2009) (Fitzwater, C.J.), *aff'd*, 679 F.3d 323 (5th Cir. 2012)) (citations and internal quotation marks omitted). Neither Galvez nor defendants address these factors in their briefs.

2

Regarding the first factor—the importance of the evidence—the court finds that the evidence at issue is important. Dr. Indresano performed Galvez's spinal surgery, and he appears to be the only designated expert who was directly involved in the surgery. Thus this expert testimony is likely important to Galvez's ability to establish that her medical bills related to her surgery were reasonable and necessary.

3

The second factor focuses on prejudice to the opposing party. The court finds that the

lack of disclosure that satisfies Rule 26(a)(2)(C) caused minimal prejudice to defendants. This is so because, even considering that Galvez's disclosures were deficient, the disclosures provided some notice that Dr. Indresano might address the reasonableness of medical bills. And the full scope of Dr. Indresano's opinions were made known to defendants during his September 15, 2021 deposition—approximately five months before the scheduled trial.

4

The third factor focuses on the possibility of curing such prejudice by granting a continuance. The court finds that a continuance could cure the prejudice to defendants, but only if the court also extends the discovery period—which closed on October 15, 2021—so that defendants can redepose Dr. Indresano in light of their new awareness of the scope of his anticipated expert testimony. Alternatively, a trial continuance and an extension of the deadline to designate expert witnesses could also cure the prejudice by allowing defendants to designate any controverting expert witnesses whom they now deem necessary.

5

Under the fourth factor, the court evaluates the explanation for the failure to comply with Rule 26(a)(2)(C). Galvez offers no explanation to justify her failure to comply with Rule 26(a). The court infers from Galvez's briefing, however, that she believes that her disclosures were sufficient given that Dr. Indresano is a treating physician. The court finds that this does not excuse Galvez's failure to submit an adequate disclosure.

6

Viewing the four-factor test holistically, the court concludes that Dr. Indresano's

expert testimony should not be stricken or excluded based on a failure to comply with Rule 26(a)(2)(C). "[T]he exclusion of evidence is a harsh penalty and should be used sparingly." *Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008) (quoting *ELCA Enters. v. Sisco Equip. Rental & Sales*, 53 F.3d 186, 190 (8th Cir.1995)). Because the evidence is important and because a less severe remedy will largely cure any prejudice that defendants suffered due to Galvez's noncompliance, the court declines to exclude the testimony and considers alternative remedies to cure any prejudice that defendants suffered.

In reaching this conclusion, the court notes that the alternative of requiring supplemental disclosures from Galvez is likely unnecessary and ineffective. This is so because it appears that, during Dr. Indresano's deposition, he testified to the relevant information that would be included in a supplemental disclosure. So defendants have obtained through this deposition testimony at least as much as, if not more than, what they would have obtained in proper disclosures. This concept is captured in Rule 26(e)(1)(A). That rule requires supplemental disclosures when the "corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Rule 26(e)(1)(A).

The court does recognize, however, that defendants suffered some prejudice from Galvez's failure to comply with the requirements of Rule 26(a)(2)(C). Accordingly, although the court denies defendants' motion to strike Galvez's expert designation of Dr. Indresano, this denial is without prejudice to their moving for appropriate relief—such as a continuance of any relevant deadlines—to allow defendants to designate additional witnesses or take

- 14 -

additional depositions related to Dr. Indresano's expert testimony. Any such motion must be filed within 21 days of the date this memorandum opinion and order is filed.

## III

The court next considers defendants' motion to exclude Dr. Indresano's testimony.

## A

The court decides these motions in its role as gatekeeper concerning the admissibility of expert testimony. *See, e.g., Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002) ("Rule 702 charges trial courts to act as 'gate-keepers . . . .'"). "[W]hile exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits." *Id.* at 250.

The court may admit proffered expert testimony only if the proponent, who bears the burden of proof, demonstrates that (1) the expert is qualified, (2) the evidence is relevant to the suit, and (3) the evidence is reliable. *See Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 147 (1999).

An expert must be qualified. "Before a district court may allow a witness to testify as an expert, it must be assured that the proffered witness is qualified to testify by virtue of his 'knowledge, skill, experience, training or education.'" *United States v. Cooks*, 589 F.3d 173, 179 (5th Cir. 2009) (quoting Rule 702). "A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject." *Id.* (citing *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999)).

To be relevant, "expert testimony [must] 'assist the trier of fact to understand the

evidence or to determine a fact in issue.'" *Pipitone*, 288 F.3d at 245 (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 591 (1993)). "Relevance depends upon 'whether [the expert's] reasoning or methodology properly can be applied to the facts in issue.'" *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007) (quoting *Daubert*, 509 U.S. at 593).

"Reliability is determined by assessing 'whether the reasoning or methodology underlying the testimony is scientifically valid.'" *Id.* (quoting *Daubert*, 509 U.S. at 592-93). The testimony must constitute "more than subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590.

The burden is on the proponent of the expert testimony to establish its admissibility by a preponderance of the evidence. *Id.* at 592 n.10. The court's inquiry is flexible in that "[t]he relevance and reliability of expert testimony turns upon its nature and the purpose for which its proponent offers it." *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010). "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the [trier of fact's] consideration." *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

B

Defendants challenge Dr. Indresano's expert testimony on these three grounds: (1) Dr.

Indresano is not qualified to provide opinions on whether the amounts charged for medical services were reasonable and necessary; (2) Dr. Indresano's opinions about the reasonableness and necessity of the medical bills are not based on a reliable method; and (3) Dr. Indresano's causation opinion is unreliable.

Galvez responds, *inter alia*, that Dr. Indresano is qualified to offer an opinion regarding the reasonableness of the charges for the medical services Galvez received because "he sets the billing rates for his personal practice, reviews bills in his role as part owner of Methodist Hospital for Surgery, and even works as an independent consultant for setting billing rates in the [Dallas-Fort Worth] area."  P. Resp. 19.  Galvez also contends that Dr. Indresano's opinions related to the reasonableness of Galvez's medical bills are reliable, and that defendants' arguments pertain to the weight a fact-finder should give his testimony, not the admissibility of such testimony.  Finally, Galvez posits that Dr. Indresano's causation opinion is reliable because he based it on the "scientific method" of diagnosing a patient.

Defendants reply that Dr. Indresano is not qualified to offer opinions about the reasonableness of medical costs and that his opinions are unreliable.

C

The court agrees with Galvez that Dr. Indresano's opinions about Galvez's medical charges are admissible.  Dr. Indresano is a board certified orthopedic spinal surgeon who has performed "hundreds, if not thousands" of anterior cervical discectomies and fusions, P. App. 49—the procedure he performed on Galvez.  Dr. Indresano performed the surgery at issue here and testified in his deposition that the charges for the surgery and related medical

expenses were reasonable and necessary. *Id*. at 18-19. These facts alone qualify Dr. Indresano to testify regarding whether the medical charges at issue are reasonable and necessary. *See, e.g., Britt v. Walgreen Co.*, 2021 WL 5318158, at *5 (W.D. Tex. Nov. 16, 2021) (holding that orthopedic spinal surgeon's testimony related to medical expenses for surgery he performed was admissible); *Cantu*, 487 F.Supp.3d at 584 (holding that a physician's experience treating and billing patients qualified him to testify about the reasonableness of medical costs despite the fact that he was not a billing specialist). And Dr. Indresano's experience reviewing billing as a part-owner in Methodist Hospital for Surgery and as a billing consultant further support the court's conclusion that he is qualified to testify about the reasonableness and necessity of Galvez's medical bills.[7]

The court also agrees with Galvez that Dr. Indresano's anticipated testimony is sufficiently reliable to be admitted in evidence at trial. Defendants' challenges to the reliability of Dr. Indresano's testimony about the reasonableness of Galvez's medical expenses address the "bases and sources" of his opinion. For example, defendants maintain that Dr. Indresano's opinion is not reliable because he does not rely on Medicare or Medicaid reimbursement rates. But such arguments affect the "weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *United States v. Hodge*, 933 F.3d 468, 478 (5th Cir. 2019) (quoting *United States v. 14.38 Acres of Land*,

---

[7]The court notes, however, that such testimony is limited to discussing the reasonableness and necessity of medical costs that Dr. Indresano would normally have reviewed during his treatment of Galvez. *See supra* at § II(C).

80 F.3d 1074, 1077 (5th Cir. 1996)).  The court therefore holds that Dr. Indresano is qualified to testify about the reasonableness and necessity of Galvez's medical costs,[8] and that such testimony is sufficiently reliable to be admitted in evidence at trial.

D

The court also concludes that Dr. Indresano's opinion testimony about the cause of Galvez's injuries is sufficiently reliable to be admitted at trial.

According to Dr. Indresano, in reaching his opinion on causation, he relied on the well-established "scientific method" of diagnosis in the medical community.  This includes taking a medical history, obtaining medical imaging, and performing a physical examination, and using this information to rule out other potential causes.  P. App. 38-40; P. Designation of Exp. Witnesses 8-9.  Other district courts in this circuit have found such methods to be sufficiently reliable under Rule 702.  *See, e.g., Cantu*, 487 F.Supp.3d at 583 (concluding that treating physician's causation testimony was sufficiently reliable because the physician "relied upon the common methodologies of his field such as review of medical history, MRIs, and the Spurling's test to determine that Plaintiff's injuries were caused by the accident"); *Perez*, 2020 WL 3074420, at *7 (concluding that treating physician's causation opinion was admissible because it was "based on [plaintiff's] reported symptoms before and after the accident, diagnostic imaging, and his own physical assessment of Plaintiff's conditions").

---

[8]*See supra* note 7.

- 19 -

And although defendants contend that Dr. Indresano failed to provide any explanation for why he ruled out other potential causes of Galvez's symptoms,[9] this assertion is contrary to Dr. Indresano's causation letter and deposition testimony.  Dr. Indresano opined that Galvez's "lack of symptoms prior to the accident, her onset, persistence, and progression of symptoms subsequent to the accident, and the failure of her symptoms to resolve completely [after] exhaustive attempts at conservative treatment indicate that this was an acute injury." P. Designation of Exp. Witnesses 9; *see* P. App. 32, 34-35.  This explanation demonstrates that Dr. Indresano considered other plausible causes of Galvez's symptoms.  *See McNabney v. Lab'y Corp. of Am.*, 153 Fed. Appx. 293, 295 (5th Cir. 2005) (per curium) ("[M]edical causation experts must have *considered* and *excluded* other possible causes of injury." (emphasis in original)).

Defendants' arguments in support of excluding Dr. Indresano's causation opinion testimony—as with their arguments related to the reliability of his opinions on the reasonableness of Galvez's medical bills—relate to the weight and credibility that the jury should assign to Dr. Indresano's causation testimony.  *See, e.g., Viterbo*, 826 F.2d at 422. Dr. Indresano's causation testimony is sufficiently reliable to be admitted for the jury's consideration and evaluation at trial.

The court therefore denies defendants' motion to exclude the expert testimony by Dr.

---

[9]Defendants also contend that Dr. Indresano did not request any pre-accident medical records.  The court disagrees.  Dr. Indresano testified that he requested medical records and imaging from prior to the accident, but was told that no relevant exams or images existed.

Indresano.

* * *

Accordingly, for the reasons explained, the court denies defendants' motions to strike and to exclude.  The court denies defendants' motion to strike Galvez's expert designation of Dr. Indresano without prejudice to their moving for appropriate relief within 21 days of the date this memorandum opinion and order is filed.

**SO ORDERED**.

December 16, 2021.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE

- 21 -